on the case of Echols v. Craig. Mr. Gow. Good morning, judges. Nicholas Gow on behalf of Derrick Echols. The district court erred by dismissing Mr. Echols' second amended complaint with prejudice under 1915A without giving him the opportunity to appeal yet again. The purpose of a 1983 action is not to constitutionalize tort law, as two of the judges on this panel said in their dissent in the Pettus opinion. It is to redress cruel and unusual punishment. Your Honors, based on Mr. Echols' allegation in a second amended complaint, there can be no doubt that Mr. Echols' injury was objectively serious. Even Mr. Craig, Dr. Craig, excuse me, does not dispute that in his brief to say that for a person to have medical waste and medical tools sutured into their gums is not seriously objective. So the issue before this court on a de novo review is to determine whether or not the circumstantial evidence that Mr. Echols could put forward in trial provides enough context to determine whether Dr. Echols' treatment decisions were proper. Well, there's certainly enough for malpractice, I would say. Yes, Judge Kahn, but this goes beyond malpractice to gross recklessness. Specifically, Mr. Echols pled in his complaint, second amended complaint, excuse me, that he heard particular noises during the treatment. He pled that he heard Dr. Craig and others make particular statements regarding the dental tools that were being used. Shortly thereafter, two weeks after, he felt pain. After rinsing his mouth, he found a dental bit in his mouth. These are facts that could be established because he provided this bit according to the record, excuse me, according to his complaint to the correctional officers. There's no dispute at that point. There's no dispute that this occurred. The dispute is what Dr. Craig's acts were that led to the recklessness, that led to Mr. Echols' injuries. Mr. Cohen, what do we know from the record about the level of sedation? That seems to be something that the district judge picked up on in deciding to dismiss this under 1915a. There's not much known in the record, Your Honor, regarding the sedation. We do know that Mr. Echols was sedated based on his complaints as well. At least some anesthetic, one hopes. One would hope that there was some anesthetic. But we don't know how general the effects were. I cannot speak to that. OK. You have, as part of your argument, counsel, you've said, well, and ordinarily, I at least would be pretty sympathetic to this when we get into these motions to dismiss. Well, you ought to give us one more chance to amend the pleadings. I'm not sure that the complaint is not sufficient as it is. But if it were to be amended again, what would you want to add to it? Your Honor, I think if the complaint were to be amended, well, one, I don't know if the complaint needs to be amended again. That's your position. And we'll be talking about that. But you spent a fair amount of effort saying it was premature to dismiss without leave to amend. So that's why I'm asking. If you had leave to amend, what would you change? If Mr. Echols were given leave to amend, specifically what he experienced during the dental procedure, what he experienced after the dental procedure, the specific statements he made to the correctional officers, the specific statements he made to the dental and medical staff at Stateville Correctional Center, those would all go to supporting the issues that were raised by the en banc court in Pettis to say what was the context behind the decisions that Dr. Craig made. And the context of the decision is based on Dr. Craig allegedly not paying attention to the statements that Mr. Echols was making, not addressing the pain that Mr. Echols said that he was experiencing, and ignoring those. Did Dr. Craig, I thought it was Dr. Mitchell who handled all the follow-up, not Dr. Craig. Did I misread that? That's part of the allegations, but I'm not sure that is. That was part of the allegations in one of the previous complaints. I'm not sure if that is actually one of the allegations in the later complaint. OK. To address an issue that the appellee raised in their brief, the issues and the claims that Mr. Echols raised are not speculative. They're not made up. They're actually consistent with the prior versions of the complaint. They just provide more detail than was previously provided. Finally, Mr. Echols, if this court so chooses, this case should be remanded to the district court for further proceedings to allow discovery to proceed. This is not the type of case that should be dismissed on a 1915A because it is not fanciful, and it should be allowed for further adjudication. I reserve the rest of my time. Thank you, counsel. Mr. Abbott. Thank you, Your Honors. May it please the court, counsel. My name is James Abbott. I represent Dr. Frederick Craig. The first issue that the court needs to look at, which really ultimately is why this appeal should be denied, is that this is not a de novo standard of review. This is an abuse of discretion standard. The district court- Why is this an abuse of discretion standard? This is an order dismissing the complaint. District judges don't have discretion to dismiss sufficient complaints. In reviewing the district court's opinion, it cites to Denton versus Hernandez with respect to the reasoning behind dismissing the second amendment complaint. And it's very clear from that order that it was dismissed because the new allegations, the allegations that were not in the first amendment complaint or the original complaint, were deemed fanciful and frivolous. And under section 1915A of 28 USC, that is something that the district court can do. It was elaborated on in the case that was cited by the district court, Denton versus Hernandez. And it specifically indicates- The complaint alleges that when an x-ray was finally taken, was that July 28? It confirmed that there was drill bits still in the mouth together with unextracted tooth. Doesn't sound to me like an x-ray is fanciful. I'm not saying the x-ray is fanciful. The order is saying that the new allegations that, and I can tell you specifically what the district court relied on in determining that these new allegations were frivolous, are, number one, when the original complaint and the first amendment complaint were filed by the way the first amendment complaint was filed by council, there were absolutely none of these allegations pertaining to overhearing the doctors essentially conspiring to leave a drill bit in the patient's gums. I thought that was a very odd thing to do on a 12B, or either a 1915 or a 12B kind of motion. Let me just give you an example, council. We review credibility decisions by immigration judges in a lot of cases. And a lot of times immigration judges will say that somebody applying for asylum was not credible because they have added additional details to the story later on, okay? Now, sometimes there's a good reason for that, sometimes there's not, but that is a kind of quintessential credibility decision. I can't imagine how somebody could make that determination under either Rule 12B-6 or Section 1915-A. Well, I would agree with you with respect to 12B-6 because that would be a failure to state a claim, but this is not a failure to state a claim opinion. It was clearly 1915. 1915-A is for people who, these are the pleadings about the aliens who have planted chips in their heads and are beaming messages to them, okay? Not for somebody who actually had real metal left in his head by the prison surgeon, an oral surgeon. Well, if I understand Your Honor correctly, I mean, I can't get inside the head of Judge Marovic who determined and clearly indicated his reasoning for dismissing. It was based on 1915-A, based on frivolity. He does lay out the reasons why he believes these new allegations of frivolous, and he relies heavily on the fact that this was a wisdom tooth extraction. You asked a very valid question earlier about the level of sedation. It's not in the record specifically, but common sense does apply here. Given that this was a wisdom tooth extraction, we know that there was a certain level of sedation, and he is now saying for the first time, not when he had an attorney and filed his First Amendment complaint, that even though he's sedated, he overhears these two doctors talking about... I must say I don't understand that. I've had all my wisdom teeth out and was never sedated. That's a very unusual dental procedure. Normally, you give local anesthetic, not any kind of general anesthetic. I don't believe it was a general anesthetic. I'm not saying it was. Sedation is a general anesthetic. Sedative drugs are low-level general anesthetics, and sometimes they produce total unconsciousness. Sure. But by and large, dentistry proceeds under local anesthesia. I would agree with you. I'm not disputing that. I don't want to rehash it, but there was some level of sedation. We don't know how much. The point here is that... So how could the judge decide that it would be incredible for the plaintiff to have been aware of some of the comments made during the procedure, given how much we don't know about that? Again, I can only go by what he specifically wrote in his opinion, and he lays out his reasonings for believing this was fanciful and or frivolous in his opinion. But I do want to move on to another point because I think this is important. This is not my only position. Even if this is being reviewed on a de novo standard, the Petty's decision does not apply here. And there's a very good reason for that. Petty's decision, as pointed out in the dissent and in the majority opinion, addresses situations where poor medical judgment or poor medical or professional judgment is being used. I've been doing medical negligence cases for a long time, and I can tell you that they essentially boil down to two types of cases. You either have poor medical judgment, such as whether or not to take somebody to surgery in the first place, are they a good candidate for surgery, or perhaps you should have taken them to surgery, but you did not. Here's the problem, counsel. The Supreme Court says in Farmer that the intent standard, deliberate indifference, is basically criminal intent. And now take two situations. A surgeon conducts an operation and leaves a sponge in the patient, which causes an infection later. Correct. And does it by accident. That's malpractice. Correct. Second possibility is he leaves the sponge in the patient knowing that he's left the sponge in the patient and sews him up. That's a crime, right? Now, we have to decide whether this complaint alleges the latter. And why isn't it enough to allege the latter? That Dr. Craig sewed up his patient knowing that something, you know, a medical instrument had been left inside. Excellent question. And I'm going to answer that based on the constraints of Pettis. And that was the decision that was, that just recently came down. I didn't ask anything about Pettis. I'm asking about this case. Why is it improper to affirm, to think, you know, given the nature of the complaint in our standard review, that this is alleging that Dr. Craig sewed up this wound knowing that there was a broken dildo inside, a broken part of a drill bit inside. Circumstantial evidence can't show that. And that's what Pettis... We don't have any evidence, counsel. We have allegations, right? The Supreme Court tells us that the standard on review of allegations is whether they're plausible. Well, there are two options. We know there was part of a drill bit inside. That's what the x-ray shows. Sure. And either Craig knew or he didn't, right? He had to know that it was broken. Yeah. And he didn't, at best for your purposes, he didn't know where it went, right? Before he sutured him up. Well, again, we don't even know that. That's based on the allegations. But again, in virtually every case involving these types of incidents... This is a complaint. We take the allegations of the complaint as true. And the allegations of the complaint as true at best rise to the level of a race, ipsa, loquitur, medical negligence, not deliberate indifference. How do we tell the difference? Why is the inference of knowledge implausible here? Because the practicality of showing it is impossible when you're utilizing circumstantial evidence. You're telling me it's impossible to show recklessness by circumstantial evidence? Based on these allegations, yes. That's what Farmer against Brennan said you can do. By the obviousness of the mistake and the danger it poses. It not only is what Farmer said, but rule eight says that, sorry, rule nine says that states of mind may be pleaded generally. I mean, you seem to be approaching this as if deliberate indifference were somehow something that had to be pleaded with specificity, as if it were like fraud. But the rule says states of mind may be pleaded generally. All you got to do is put in your complaint that the state of mind is recklessness. And then we move to the next stage of the case. I mean, that's just black letter. I understand where you're coming from, Your Honor. But again, there's absolutely no precedent for this type of matter being a deliberate indifference case. I hope we don't have many cases where dentists leave drill bits inside the mouths of their patients. We actually have a number of cases like that. But again, they're all reciprocator medical negligence cases. They aren't deliberate indifference cases. I mean, at the end of the day, we've got allegations that a lower court judge did determine pursuits in 1915A are fanciful and frivolous. That's an abuse of discretion standard. Reasonable minds may disagree, but ultimately, under an abuse of discretion standard, which is the proper standard, rather than de novo, the opinion should be upheld. Unless you have any other questions, that is all I have. Thank you, Counsel. Thank you, Your Honors. Anything further, Mr. Gowen? I'll brief you, Your Honor. Nicholas Gowen. Just to follow up, the Seventh Circuit has made clear the de novo review is proper for 1915A dismissals. That's the review that's at issue here. That's what's been briefed in our reply as well as our opening brief. Finally, Judge, the allegations that Mr. Eccles pled are not fanciful. We know and evidence will establish, or can establish, that a drill bit was found, was provided to a correctional officer, and pieces of a drill bit, as well as medical waste, was later found as a result of an X-ray. The recklessness here is that, based on the allegations, Dr. Craig knew that the drill bit broke. Dr. Craig failed to locate the drill bit of the medical waste, knew he didn't look for it, and as a result, he ultimately sutured Mr. Eccles' gums without ever notifying anyone. This goes beyond a tort. This is not constitutionalizing tort law. This is not medical malpractice. It's recklessness. It's gross recklessness. This case should be remanded to the district court for further proceedings. If there are no other questions, I complete my argument. Thank you, Mr. Gowen, and the court appreciates your willingness to accept the appointment in this case and the willingness of your law firm as well, and we appreciate the help to the court as well as to your client. Thank you, Judge. The case will be taken under advisement.